No. 81-514

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

CITY OF BILLINGS, MONTANA,

Plaintiff and Respondent,

vs.

BILLINGS FIREFIGHTERS LOCAL NO. 521, and the
BOARD OF PERSONNEL APPEALS,

Defendants and Appellants,

and

BUTTE TEAMSTERS UNION LOCAL NO. 2, and
UNITED FOOD & COMMERCIAL WORKERS INTER-
NATIONAL UNION, CONSISTING OF LOCAL UNIONS
NO. 4R, 8, 33, and 1981 (UFCWIU), AFL-CIO,

Amicus Curiae,

and

MONTANA STATE COUNCIL OF PROFESSIONAL
FIREFIGHTERS,

Amicus Curiae.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Hon.Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Boschert and Boschert, Billings, Montana
Rosemary Boschert argued, Billings, Montana
James Gardner argued, Bd. Personnel appeals, Helena, Montana

For Respondent:

K. D. Peterson argued, Billings, Montana

For Amicus Curiae:

Donald C. Robinson, Butte, Montana
Poore, Roth & Robinson, Butte, Montana
D. Patrick McKittrick, Great Falls, Montana
Barry J. Hjort, Helena, Montana
David V. Gliko, Great Falls, Montana
Mae Nan Ellingson, Missoula, Montana

---

Submitted: June 28, 1982

Decided: September 28, 1982

Filed: SEP 28 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

The Thirteenth Judicial District Court of Montana issued a judgment on August 11, 1981, affirming in part and reversing in part a March 26, 1979, order of the Board of Personnel Appeals (BPA) establishing the membership of the Billings Fire Department's bargaining unit. The BPA and the Billings Firefighters, Local #521 appeal the judgment of the District Court. We reverse the District Court in part and reinstate the March 26, 1979, order of the BPA.

The Montana Public Employees Collective Bargaining Act was enacted in 1973. Pursuant to national labor policy, as set forth in the National Labor Relations Act, 29 U.S.C. section 151 et seq. (1976), the Montana Act specifically excludes supervisory and management employees from the definition of "public employee." Only public employees are allowed to bargain collectively, section 39-31-201, MCA. Thus, supervisory and management employees were effectively denied membership in collective bargaining units.

From 1968 until the commencement of this action in 1977, the City of Billings continuously recognized Billings Firefighters Local #521 as the collective bargaining unit for all Billings firefighters except the Fire Chief and the Assistant Fire Chief. During labor negotiations in 1977, the City of Billings attempted to exclude the line battalion chiefs, specialty officers and fire captains from the bargaining unit. The City contended that those employees were either supervisory or management, as defined in the Public Employee Collective Bargaining Act, and thus ineligible for membership in a collective bargaining unit.

In response, the Union contended that the Act's grandfather clause, section 39-31-109, MCA, by recognizing all established

-2-

collective bargaining agreements, also recognized all existing

bargaining units. That section provides:

> "39-31-109. Existing collective bargaining
> agreements not affected. Nothing in this
> chapter shall be construed to remove recogni-
> tion of established collective bargaining
> agreements already recognized or in existence
> prior to the effective date of this act."

Union argues that the "existing agreement" recognizes Local

#521 as the bargaining unit and that therefore, the unit's

composition is not controlled by section 39-31-201, MCA.

At the request of the City and the Union, the BPA

conducted an administrative hearing December 15 and 16,

1977, to clarify the membership of the bargaining unit. On

February 28, 1978, the hearings officer issued a recommended

order concluding that "the appropriate bargaining unit in

the Billings Fire Department is that unit which has been

recognized by the City of Billings since 1968, i.e., all

employees of the Billings Fire Department except the Chief

and the Assistant Chief." She reached this conclusion by

interpreting the grandfather clause to recognize existing

bargaining units as well as existing bargaining agreements,

as advocated by the Union.

The City appealed the recommended order to the Board of

Personnel Appeals. On July 28, 1978, the BPA issued an

order remanding the case to the hearings officer with instruc-

tions to apply the facts to the following two-prong test:

(1)   Is the position in question that of a supervisor

or management official?

(2)   If it is, does the inclusion of that position in

the bargaining unit create an actual substantial

conflict which results in the compromising of the

interests of any party to its detriment?

This test is the result of a considered effort by the

BPA to reconcile the grandfather clause, which it interprets

as recognizing both bargaining units and agreements already in existence, with section 39-31-201, MCA, forbidding non-public employees from belonging to collective bargaining units. The BPA found that where the two sections come into conflict, the conflict must be settled in view of the policy of the Act. Section 39-31-101, MCA, states the policy:

> "39-31-101. Policy. In order to promote public business by removing certain recognized sources of strife and unrest, it is the policy of the state of Montana to encourage the practice and procedure of collective bargaining to arrive at friendly adjustment of all disputes between public employers and their employees."

The test adopted by the BPA allows for grandfathering and also prevents conflicts intended to be avoided by the exclusion of supervisors and management officials from the unit. If the presence of a supervisory or a management position within the unit becomes the source of "strife and unrest," the position will be removed from the unit. If there is no strife or unrest, evidenced by actual substantial conflict, the grandfathered unit will be allowed to remain "as is."

The hearings officer issued a thirty-page decision on January 19, 1979, again concluding that the bargaining unit should remain as it has been since 1968.

To determine whether or not the positions were those of supervisors or management officials, the hearings officer applied a multi-question test to each contested position. She considered the duties attendant to each position as well as the definitions of supervisor and management official found in section 39-31-103, MCA. She concluded that the line battalion chiefs, the communications officer and the fire marshal in the Billings Fire Department are supervisory employees. She further concluded that the captains, maintenance

officer and training officer are not supervisory employees. None of the positions were found to be that of a management official.

Next, the hearings officer applied the second part of the test to those positions found to be supervisory. She determined that the presence of the positions in the unit created no actual substantial conflicts resulting in the compromising of the interests of any party to its detriment. Therefore, she allowed the supervisory positions to remain in the unit.

In reaching that conclusion, the hearings officer considered the following:

(1) Local #521 has never gone on strike.

(2) Testimony of the fire chief that in his twenty-six years on the Department, very few formal grievances had been filed.

(3) Testimony of an engineer that only one grievance had gone to arbitration since 1968.

(4) Testimony of the fire marshal that his membership in the unit had never caused problems at staff meetings with the fire chief.

(5) Testimony of the fire chief, battalion chiefs and captains that the current structure of the unit had never interfered with the efficient operation of the Department.

(6) Testimony of a captain that his membership in the unit had never interfered with the exercise of his authority.

(7) Testimony of the union's chief negotiator for the 1977 contract that the make-up of the unit had caused no disharmony and that there were no special interest groups within the unit.

(8) Testimony of engineers and firemen that no internal

conflict or disharmony existed due to the bargaining unit structure.

(9) A petition signed by 80% of the specialty officers and 83% of the lieutenants, engineers and firefighters stating: "We the undersigned members of I.A.F.F. Local 521 are in opposition to any change in our bargaining unit."

On March 26, 1979, the Board of Personnel Appeals adopted the recommended order of the hearings officer as its final order. The City of Billings appealed to the District Court. Following a hearing, the District Court issued an order July 28, 1981, concluding the following:

"...

"2. Supervisors and management personnel are excluded from Firefighters Local #521 Bargaining Unit and former Section 59-1615, R.C.M. [the grandfather clause], does not change the statutory exclusions.

"3. The Line Battalion Chiefs are supervisors and are excluded from Firefighters Local #521 Bargaining Unit.

"4. The Specialty Officers, Communications Officer, Maintenance Officer, Fire Marshal and Training Officer are supervisory and excluded from Firefighters Local #521 Bargaining Unit.

"5. The Fire Captains shall remain with Firefighters Local #521 Bargaining Unit.

"6. The test applied by the Board of Personnel Appeals is not logical and is arbitrary and capricious. . ."

In so holding, the District Court found requiring an actual conflict to occur before removing a supervisory or management position from the unit to be illogical as their presence in the unit is inherently conflicting. In addition, it found all officers except fire captains to be supervisory personnel and excluded them from the unit.

In their appeal of the order and judgment of the District Court, the BPA and the Union present several issues for our consideration:

(1) Whether the state legislature authorized the BPA as the agency to establish the appropriate bargaining units for public employees?

(2) Whether the BPA's interpretation of section 39-31-109, MCA, the grandfather clause, was a rational statutory construction, or whether it was illogical, arbitrary and capricious?

(3) Whether the BPA's two-prong test reconciling the inconsistencies between two sections within the Montana Public Employees Collective Bargaining Act was arbitrary and capricious?

(4) Whether the BPA's determination that certain employees were supervisory or management officials was clearly erroneous?

(5) Whether the BPA's test, if rational, was correctly applied by the BPA to the facts of this case?

On cross-appeal, the City presents us with one other issue: Whether the District Court erred when it failed to find the BPA's finding that captains were not supervisory or management officials to be clearly erroneous?

ISSUE ONE

The Montana legislature clearly authorized the BPA as the agency to establish appropriate bargaining units for public employees when it enacted section 39-31-202, MCA:

> "39-31-202. Board to determine appropriate bargaining unit-factors to be considered. In order to assure employees the fullest freedom in exercising the rights guaranteed by this chapter, the board or an agent of the board shall decide the unit appropriate for the purpose of collective bargaining. . ."

Like all BPA orders, an order determining the membership of a bargaining unit is subject to review by the district court, section 39-31-409, MCA. Pursuant to section 39-31-105, MCA, judicial review of contested agency orders is

-7-

governed by the Montana Administrative Procedure Act (MAPA).

Section 2-4-704, MCA, sets forth the MAPA standards of

review to be followed by a district court when reviewing an

agency decision. The relevant portions of section 2-4-704,

MCA, state:

> "(2) The court may not substitute its judg-
> ment for that of the agency as to the weight
> of the evidence on questions of fact. The
> court may affirm the decision of the agency
> or remand the case for further proceedings.
> The court may reverse or modify the decision
> if substantial rights of the appellant have
> been prejudiced because the administrative
> findings, inferences, conclusions, or decisions
> are:
>
> ". . .
>
> "(e) clearly erroneous in view of the reliable,
> probative, and substantial evidence on the
> whole record;
>
> "(f) arbitrary or capricious or characterized
> by abuse of discretion or clearly unwarranted
> exercise of discretion;
>
> ". . . ."

Pursuant to that statute, findings of fact by an agency

have been subject to a "clearly erroneous" standard of

review by the courts. Wheatland County v. Bleeker (1978),

175 Mont. 478, 575 P.2d 48. Conclusions of law are subject

to an "abuse of discretion" review. These standards differ

due to the agency's expertise regarding the facts involved

and the court's expertise in interpreting and applying the

law. Davis' 4 Administrative Law Treatise, §29.01 (1958).

Both statutory and case law have employed the terms

"clearly erroneous," "abuse of discretion" and "substantial

credible evidence" in form not entirely clear nor consistent.

We view this as an appropriate opportunity for clarification.

Specifically, the factual findings of the BPA will be

upheld if supported by substantial evidence. Section 39-31-

409(4), MCA. MAPA allows factual findings to be overturned

when they are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." Section 2-4-704(2)(e), MCA. We find these tests can be harmonized. If there is substantial credible evidence in the record, the findings are not "clearly erroneous." Under either statute the scope of judicial review is the same. If the record contains support for the factual determinations made by the agency, the courts may not weigh the evidence. They are bound by the findings of the agency.

In reviewing legal questions, the scope of review is broader. Where the intent of statutes is unclear, deference will be given to the agency's interpretation. Ford Motor Credit Co. v. Milhollin (1980), 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22; FCC v. WNCN Listeners Guild, et al. (1981), 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521. Where it appears that the legislative intent is clearly contrary to agency interpretation, the courts will not hesitate to reverse on the basis of "abuse of discretion."

The determination of a bargaining unit involves mixed questions of law and fact as is hereafter discussed. In reviewing the BPA's findings of fact and conclusions of law, we will be bound by the foregoing scope of review.

ISSUE TWO

The BPA's interpretation of section 39-31-109, MCA, the grandfather clause, is primarily a question of law. Therefore, the reviewing court should determine whether that interpretation involves "abuse of discretion." The clause recognizes all bargaining agreements in existence at the time of the passage of the Montana Public Employee Collective Bargaining Act. The BPA asserts that existing bargaining units should also be recognized.

The City of Billings has recognized Local #521 since
1968.  The bargaining agreement reflects that in its "recogni-
tion clause."  Therefore, by recognizing the agreement, the
City recognizes the Unit.  The Unit does not cease to exist
when the agreement ends.  The Unit continues to exist until
a new Unit is formed and recognized.  The BPA's interpretation
of the grandfather clause is rational, does not involve an
abuse of discretion and we reinstate it.

ISSUE THREE

The BPA's interpretation of the grandfather clause
previously discussed, recognizes existing bargaining units
containing supervisory personnel in violation of section 39-
31-201, MCA.  The Board recognized that public policy supports
elimination of conflict of interest within a bargaining unit
and therefore, notwithstanding its interpretation of the
grandfather clause, sought to foster the spirit of the Act
by adopting a legal test to eliminate actual substantial
conflict.  The validity of such a test is a question of law.

The District Court found the presence of supervisory or
management officials in the bargaining unit to be inherently
conflicting.  It therefore held the test to be irrational
for allowing continued membership until actual substantial
conflict occurs.  We do not agree.

Testimony that Local #521, a bargaining unit consisting
of firefighters as well as supervisors, has had a relatively
peaceful existence since 1968 indicates a lack of any inherent
conflict.  This does not mean that actual substantial conflict
could not occur.

The test developed by the BPA is a rational, considered
effort by the BPA to assure an effective bargaining unit.
The test considers the policy of the act, i.e., to remove

strife and unrest from bargaining units, as well as some of the factors set forth in section 39-31-202, MCA, for determining unit composition--the "history of collective bargaining" and the "desires of the employees." The result accomplished preserves the public policy underlying the act. We find the Board's approach to be a rational one for determining bargaining unit memberships.

ISSUE FOUR

In applying the BPA's test, the hearings officer made many findings of fact regarding the supervisory or management nature of various department positions. She applied a multi-question test to each position and considered the definitions of supervisory and management official in making her determination.

The District Court, to reverse these findings of fact, had to find the record bare of "substantial credible evidence." We find such evidence to exist.

The District Court supplied no reason for finding the position determinations to be unsupported. Rather, it chose to substitute its findings for those of the BPA. The governing statute provides: "The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 2-4-704(2), MCA. There is substantial, and as we have herein noted, abundant evidence to support those determinations. Therefore, we reinstate the findings of the BPA that only the line battalion chiefs, the fire marshal and the communications officer are supervisors.

On cross-appeal, the City asks us to determine whether or not the District Court erred when it failed to find the BPA's determination that fire captains are neither supervisory nor management officials to be clearly erroneous. The District

Court did not err. The hearings officer considered the duties of the captains and compared them to the duties of the supervisors and management officials set forth in section 39-31-103(3) and (4), MCA. There was substantial evidence to support the BPA's determination.

ISSUE FIVE

Finally, the District Court held that because the presence of supervisors in a bargaining unit creates inherent conflict, the second prong of the BPA's test was not correctly applied to the instant facts. We have already stated that no inherent conflict exists within Local #521. In addition, there was a substantial amount of testimony presented to the hearings officer indicating that no actual substantial conflict exists. The hearings officer correctly applied the test to Local #521.

The order of the District Court is vacated and the March 26, 1979, order of the Board of Personnel Appeals is reinstated.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

-12-

Mr. Justice Fred J. Weber, dissenting:

The majority opinion constitutes a careful and thoughtful analysis of the statutes, case law, and the underlying problems of collective bargaining in the public employee sector. I do not disagree with the analysis of the majority opinion and I am therefore led to sign the opinion.

However, I dissent because the opinion does not address a different interpretation of the statutes which I believe should be considered. I dissent with the aim of calling this matter to the attention of the legislature so that it may determine if additional legislation is required.

As pointed out in the majority opinion, the Montana Public Employees Collective Bargaining Act (herein called "Act") is in agreement with the national labor policy as set forth in the National Labor Relations Act with regard to the definition of "public employees." Both the Montana and the federal definition of "public employees" excludes both supervisory and management employees. The result of the majority opinion is to neutralize the statutory exclusion as to both supervisory and management employees where they are a part of a bargaining unit in existence prior to the 1973 effective date of the Act. Such neutralizing of the statutory exclusion will continue without limit of years so long as the collective bargaining unit remains in existence. I suggest that a different interpretation can be given to the statute which will not have the effect of repealing the definition of public employees for bargaining units in existence prior to 1973.

The Act emphasizes that "public employees" shall be protected in the exercise of their right of self-organization, collective bargaining and other related rights. The next

step is to determine what employees are to be protected
under this public employees collective bargaining act.  The
Act itself specifically defines "public employees" in section
39-31-103, MCA, as follows:

> "(2)(a)   'Public employee' means:
>
> "(i)   except as provided in subsection (2)
> (b) of this section, a person employed by
> a public employer in any capacity; and
>
> ". . .
>
> "(b)   'Public employee' does <u>not</u> mean:
>
> "(i)   an elected official;
>
> "(ii)   a person directly appointed by the
> governor;
>
> "(iii)   a supervisory employee, as defined
> in subsection (3) of this section;
>
> "(iv)   a management official, as defined in
> subsection (4) of this section;
>
> "(v)   a confidential employee, as defined
> in subsection (12) of this section;
>
> "(vi)   a member of any state board or com-
> mission who serves the state intermittently;
>
> "(vii)   a school district clerk;
>
> "(viii)   a school administrator;
>
> "(ix)   a registered professional nurse per-
> forming service for a health care facility;
>
> "(x)   a professional engineer; or
>
> "(xi)   an engineer-in-training."  (Underscoring
> added.)

The definition is clear.  It totally excludes a number of
persons, starting with elected officials, including supervisory
employees and management officials, and ending with engineers-
in-training.  It is critical to note that the statute does
not base exclusion upon a theory of potential "substantial
conflict" if such employees are included in a bargaining
unit.  Instead, the legislature by definition states that
these described persons do <u>not</u> constitute "public employees"

who are granted the right of collective bargaining. The result of the majority opinion is to disregard the very specific exclusion, and to add a new idea--the exclusions shall be applied only if there is "substantial confict." Such an interpretation adds a test not included in the statute.

If a collective bargaining unit were organized after the 1973 effective date of the Act, such a unit cannot include people other than public employees as defined in the Act; so that in such a situation, supervisory employees and management officials could not under any circumstance be included as a part of the unit, even though proof might be submitted that their presence would not create a substantial conflict. The result is a direct conflict between the persons who are "public employees" in different bargaining units.

The majority opinion bases its conclusions on the grandfather clause, which is set forth in section 39-31-109, MCA, as follows:

> "Existing collective bargaining agreements not affected. Nothing in this chapter shall be construed to remove recognition of established collective bargaining agreements already recognized or in existence prior to the effective date of this act."

I have no problem in agreeing that the grandfather clause requires recognition of the established collective bargaining agreement with Local #521. I also find no problem in recognition of Local #521 as the bargaining unit. I do question the conclusion that all persons who were in the bargaining unit must continue to be allowed to remain in the bargaining unit in future years.

Without question the collective bargaining agreements and the bargaining units in existence prior to the 1973 date

of the Act must be recognized.  However, in contract negotiations taking place after the effective date of the Act in 1973, the statutes appear to require that the statutory definition of "public employees" must be recognized, with the result that in such subsequent negotiations, supervisory employees and management officials as defined in the Act must be excluded from the bargaining unit.  The result would be that the bargaining unit would continue negotiations as it did prior to 1973, but that a unit could no longer retain as a part of the members of the unit any of the persons excluded from the statutory definition of "public employees."  The result would be that the legislative determination as to the persons who are entitled to bargain collectively under the Act would be recognized.  The further result would be that all bargaining units under the public employees process would retain the same categories of employees.

A number of parties representing different unions have appeared in this action.  Apparently all of them would oppose a construction of the statutory exclusion as above suggested.  It seems to me that this is an expression of disagreement by the unions with the clear definition stated by the legislature as to the persons who <u>can</u> and <u>cannot</u> be classed as public employees for collective bargaining purposes. If the legislature agrees with the interpretation of the majority, no legislation is required.  On the other hand, if the legislature determines that the definition of "public employees" set forth in the statute should be carried through, then additional legislation is required.

Justice

-16-